1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE MIDDLE DISTRICT OF GEORGIA

3                    MACON DIVISION

4          _____

5

6    THE UNITED STATES OF AMERICA  :
                                   : Case No. 5:09-CR-05(HL)
7    VS                            :
                                   :   July 30, 2009
8                                  :   Macon, Georgia
     JOHN LEE ANDERSON, III,       :
9                   DEFENDANT. :
     _____

10
                         SENTENCING HEARING
11
              BEFORE THE HONORABLE HUGH LAWSON
12          UNITED STATES DISTRICT JUDGE, PRESIDING

13   APPEARANCES:

14   FOR THE GOVERNMENT:        PAUL MCCOMMON, AUSA.
                                UNITED STATES ATTORNEY'S OFFICE
15                              P.O. BOX 1702
                                MACON, GA 31202-1702
16
     FOR THE DEFENDANT:         FRANK HOGUE
17                              HOGUE & HOGUE, LP
                                341 THIRD STREET
18                              MACON, GA 31202

19

20

21

22   _____

23          *SALLY L. GRAY, CCR, RPR, USCR*
                    *P.O. BOX 875*
24            *MACON, GA 31202-0875*

25              *(478-752-3497)*

```
1              P R O C E E D I N G S

2    JULY 30, 2009

3         THE COURT:  John Lee Anderson.

4         MR. MCCOMMON:  Good morning, Your Honor.

5         THE COURT:  Good morning.  Good morning, Mr. Hogue.

6         MR. HOGUE:  Good morning, Your Honor.

7         THE COURT:  Mr. Anderson.

8         THE DEFENDANT:  Good morning, sir.

9         THE COURT:  What says the government?

10        MR. MCCOMMON:  Your Honor, there are two objections

11   that have been entered into by the government and by the

12   defendant, but before I address those, there were some victim

13   issues in this case.

14        Several victims whose images were possessed by Mr.

15   Anderson had expressed that their victim impact statements be

16   made available for the Court and the U.S. Attorney's Office

17   has contacted them, obtained those victim impact statements,

18   and made those available for the probation office, and I think

19   those were made available for the Court and also to the

20   defense.

21        So, the government has complied with its obligations as

22   to the victims in this case.  There was also one victim who is

23   the victim of what's known as the Misty Series who has an

24   attorney, Mr. James Marsh.

25        Originally Mr. Marsh had made a request for restitution
```

1     in this case, and the Court, at the request of the government,

2     signed an order to bifurcate the proceedings so that

3     restitution could be possibly later addressed by the Court.

4     Mr. Marsh withdrew his request for restitution.  So that is no

5     longer an issue.

6         **THE COURT:**  Did you withdraw it in writing?

7         **MR. MCCOMMON:**  Yes, sir.  Yes, sir, we received a

8     communication from him that he would not intend to pursue

9     restitution in this case.

10         **THE COURT:**  Is that a part of the record?

11         **MR. MCCOMMON:**  I furnished a copy to probation.  I did

12     not make it a copy of the Court's record.

13         **THE COURT:**  Don't you think it should be in the record?

14         **MR. MCCOMMON:**  I can do that, Your Honor.

15         **THE COURT:**  Go ahead.

16         **MR. MCCOMMON:**  So that would resolve the victim and

17     restitution issues.

18         **THE COURT:**  So there are none?

19         **MR. MCCOMMON:**  There are none.

20         **THE COURT:**  Do you agree with that, Mr. Hogue?

21         **MR. HOGUE:**  I do, Your Honor.

22         **THE COURT:**  Okay.  What else?

23         **MR. MCCOMMON:**  Your Honor, there were two objections

24     made by the government and by the defense, and they were

25     addressed by the probation office in the revised presentence

1    report dated June 9th, 2009.  So let me address those.

2        The first is, there was -- in Paragraph 22, there was an

3    enhancement of two levels for distribution, and it was the

4    position of the probation office that there were at least two

5    instances where Mr. Anderson distributed child pornography,

6    and that the enhancement was appropriate because the images in

7    question reflect the sexual exploitation of a minor and that

8    the adjustment is proper.  It's the position of the government

9    that this enhancement is not appropriate.

10       It's the government position that that enhancement should

11   only be used where a defendant distributes child pornography

12   as defined by law, and based upon my viewing of these images

13   and the chats that were involved -- Mr. Hogue came over one

14   day, and we spent three hours together, and I showed him

15   everything -- based on my examination of the evidence, Mr.

16   Anderson did not distribute child pornography as defined by

17   the statute.  So therefore the government would not support

18   that two-level enhancement.

19       Now, certainly in the chats there was discussions of

20   material.  There was -- On two instances there was images that

21   involved minors, but the government would not view those

22   images as being child pornography as defined by law.  In the

23   government's view, that's what this enhancement is for, for

24   someone who distributes child pornography.

25       THE COURT:  Two parts of it; distribution, and then

1    child pornography?

2        MR. MCCOMMON:  Yes, sir.

3        THE COURT:  Do you contend that there was no

4    distribution of whatever it was, whether it was child

5    pornography or not?

6        MR. MCCOMMON:  He transmitted images, but --

7        THE COURT:  Is that distribution?

8        MR. MCCOMMON:  No, sir.  It's distribution, but it's

9    the government's position that that's not -- it was not child

10   pornography.

11       THE COURT:  Well, again, listen to what I'm saying.

12   There are two parts here under consideration.  One, is

13   distribution, the other is child pornography.

14       Do you contend that there was no distribution of

15   anything, or do you concede that there was distribution, but

16   it's the government's position what was distributed was not

17   child pornography?

18       MR. MCCOMMON:  The latter.

19       THE COURT:  Okay.  So there was distribution?

20       MR. MCCOMMON:  Yes, sir.

21       THE COURT:  As either under the statute or under the

22   Guideline 2G2.2(b)(3)(F).

23       MR. MCCOMMON:  There was --

24       THE COURT:  That's what it says here.

25       MR. MCCOMMON:  Yes, sir.  There was distribution.

1      **THE COURT:**  Okay.  So, how is a determination to be

2  made as to whether the matter which was distributed was child

3  pornography?  Is the Court required to view it and then make a

4  factual determination?

5      **MR. MCCOMMON:**  Your Honor, if the Court wanted to

6  pursue it to that extent, that's what the Court would have to

7  do.  I don't know of any other way than to actually view what

8  was -- what I can do is provide a description to you, if you'd

9  like to see that.

10      **THE COURT:**  All right.  Let's hear that.

11      **MR. MCCOMMON:**  Your Honor, this is a report that was

12  provided by Special Agent Jalaine Ward of the FBI.  This was

13  provided to Mr. Hogue.

14      **MR. HOGUE:**  Yes, it was.

15      **THE COURT:**  And what the next to the last paragraph,

16  where I put a checkmark, would be what she described.

17  *(Pause)*

18      **THE COURT:**  Under the statute what must a picture show

19  to be child pornography?

20      **MR. MCCOMMON:**  Actual explicit sexual conduct or at a

21  minimum, lewd exhibition of the genitals of the child.

22      **THE COURT:**  What is a lewd exhibition of the child?

23      **MR. MCCOMMON:**  A photograph that focuses on -- that

24  plainly focuses on genitalia of a child.

25      **THE COURT:**  Well, Agent Ward says in this report, she

1  uses the word "numerous sexually explicit pictures of

2  children."  Says "the child is clothed, but her legs are

3  spread open and much of her buttock are exposed."  That does

4  not meet the test?

5       MR. MCCOMMON:  Your Honor, based on my view of the

6  images it did not, but that would be the extent of the

7  evidence of distribution, is what you've viewed.

8       THE COURT:  All right.  Have you another objection?

9       MR. MCCOMMON:  Yes.  As to Paragraph 24 --

10       THE COURT:  Now, that was Paragraph 22?

11       MR. MCCOMMON:  Yes, sir.  As to Paragraph 24, there was

12  an enhancement, a five-level increase for possession of more

13  than 600 images, and what the presentence report identifies is

14  276 images and five video clips.  And under the Guidelines

15  each video clip is assumed to be 75 images, so that would

16  total in excess of 600 images.

17      As a part of the original stipulation, the government and

18  the defense stipulated that the maximum amount of images

19  should be 300, and in order for the Court to understand the

20  reason for that stipulation I need to give a little

21  background.

22      As is described in the presentence report, this

23  investigation had a bit of a history before it came to the

24  FBI.  The defendant's wife discovered the child pornography on

25  the computer.  At that time she had private counsel in

1  relation to, I think, a pending divorce action against her

2  husband.  The evidence was originally given to her private

3  counsel.

4      At some point, the Bibb County Sheriff's Department

5  became involved.  They took possession of the evidence.  They

6  obtained state search warrants, then they arrested Mr.

7  Anderson, and then after they did all of that, they turned the

8  case over to the FBI.

9      When the investigation was first presented to the U.S.

10  Attorney's Office, we made a determination given the hands

11  that the evidence had gone through, that we were going to only

12  focus on evidence that we felt was clearly not tainted by the

13  original handling through the private attorney's office and

14  through the Bibb County Sheriff's Office.

15      And our view was to -- clearly, the hard drive of Mr.

16  Anderson's computer was -- that was not tainted.  That

17  evidence would clearly be admissible, and we focused on what

18  he possessed on the hard drive of his computer, and that was

19  the 276 issue images.  The five video clips came from a DVD

20  that was otherwise seized.

21      So we did not originally count those five video clips

22  that were not on the hard drive of the computer.  Does the

23  Court understand what I'm saying?

24      **THE COURT:**  I understand what you're saying.  They came

25  from another source?

1    MR. MCCOMMON: Well, they came either from a source

2    that was not as clearly not tainted to the U.S. Attorney's

3    Office, or were obtained pursuant to state search warrants

4    that we didn't think were valid. So we confined our count of

5    the images to what was on the hard drive of his computer.

6    If the Court did include the five video clips, that would

7    not be improper. The Court could do that. But that's the

8    reason for the government's stipulation as to the 300 images

9    and not originally including those five video clips.

10   If the Court does include the five video clips -- which

11   is going to bump him up to the maximum amount of images under

12   his guideline -- I would want to point out that under this

13   definition any video clip is going to be counted as 75 images,

14   whether that video clip is 2 seconds or up to 5 minutes, and

15   then above 5 minutes, the guideline says the Court upwardly

16   depart in that instance. All the video clips were relatively

17   short, less than a minute.

18   So I point that out to the Court too for whatever use you

19   want to make in exercising your discretion. So that's the

20   reason for two objections and that's the reason for the

21   position of the government.

22   THE COURT: All right. Anything else?

23   MR. MCCOMMON: No, Your Honor.

24   THE COURT: All right. Do you have any objections, Mr.

25   Hogue?

1      **MR. HOGUE:**  Yes, Your Honor.  We have made the same two

2  objections that the government makes to Paragraphs 22 and 24

3  and for essentially the exact same reasons.  This case started

4  in April 2006 when the divorce attorney turned over the

5  computer to local authorities.  So we reviewed everything in

6  it.

7      It's been a long, difficult three years now, although the

8  negotiations ended some months ago, and I think what Mr.

9  McCommon has relayed to the Court is an accurate and fair

10  assessment of the evidence, the admissible evidence, the

11  Fourth Amendment issues that we would have raised, and the

12  assessment of how to count images and how to evaluate

13  distribution.  So we make the same two objections for all the

14  reasons that the Court has just heard.

15      **THE COURT:**  Well, with respect to Paragraph 22, is your

16  position the same as that of the government, that is to say,

17  you concede that there was distribution, but you contend that

18  the material distributed was not pornographic?

19      **MR. HOGUE:**  Yes.  We do take that same position.  I

20  will state, in addition to that, it does appear the evidence

21  shows distribution, however, Mr. Anderson does not remember

22  ever distributing images.  But that's what it appears the

23  analysis of the computer would reveal.  So we have to concede

24  it on that ground.  So, yes, our argument is the same,

25  distribution, yes; child pornography, no.

1    **THE COURT:**  Now, with respect to the material in

2  Paragraph 22, how many images are involved?

3    **MR. HOGUE:**  In the distribution?

4    **THE COURT:**  Yes.

5    **MR. HOGUE:**  I'm only aware of what's in the report that

6  you've just looked at.  That says two occasions, I believe.

7    **THE COURT:**  Well, what it says here is:  "Evidence of

8  distribution can be found on DVD, DEHQ12.  Numerous sexual

9  explicit pictures of children were sent on January 29th, 2006

10 and February 25, 2006 to Bonerinatl."  I guess, that's how --

11 B-O-N-E-R-I-N-A-T-L.  "UID 391040."  I don't know what that

12 means.

13     "The chat includes conversation about having sexual

14 intercourse with an 11 year old.  What could be argued to be

15 sexually explicit pictures or child erotica was sent to

16 Applicant 0002002, UID Code 175945, on March 18th, 2006.  The

17 child is clothed, but has her legs spread open and much of her

18 buttock exposed.  There are three pictures of very young

19 girls, one of which may be sexually explicit."

20     I can't tell from that paragraph how many pictures are

21 involved, how many images.

22    **MR. MCCOMMON:**  Agent Ward is in the courtroom.  Do you

23 have a recollection?

24    **THE COURT:**  Do you want her to come up and let her

25 testify?

1    **MR. MCCOMMON:**  Yes, sir.

2    **THE COURT:**  Agent Ward, come up and have a seat on the

3    stand, please, ma'am.

4    **DEPUTY CLERK:**  Do you solemnly swear that your

5    testimony in this case shall be the truth, the whole truth,

6    and nothing but the truth, so help you God?

7    **THE WITNESS:**  Yes, I do.

8    **DEPUTY CLERK:**  State your name for the court reporter.

9    **THE WITNESS:**  Jalaine J. Ward.

10   **THE COURT:**  And you're an FBI agent?

11   **THE WITNESS:**  Yes, sir.

12   **THE COURT:**  All right.

13                        **JALAINE WARD**

14      **Witness, having first been duly sworn, testified on**

15                   **DIRECT EXAMINATION**

16   BY MR. MCCOMMON:

17   Q.   Agent Ward, do you have a recollection -- you heard your

18   report read by the Court?

19   A.   Yes.

20   Q.   Do you have a recollection of those two instances with

21   the e-mails as to how many images were actually sent as

22   attachments to those e-mails?

23   A.   In reference to the actual report, with the report that

24   you have, there are numerous images that are traded back and

25   forth, some of which are not -- would not be considered

1   sexually explicit.  There are at least two or three referenced

2   in that that went back and forth between John Anderson and the

3   Boner, B-O-N, screen name, that could be considered

4   pornography or sexually explicit.  Certainly what was received

5   by John Anderson in that exchange there is explicit child

6   pornography.

7        There are other trades that went on, and according to the

8   -- not my report, but the CART examiner report, there was

9   evidence of distribution on using the Google Hello Chat line

10  -- Google Hello Website, and I researched some of that, and

11  there are other trades where John Anderson received explicit

12  child pornography.

13       Again, number of images, I did not count, you know -- did

14  not go into all of the trades and did not count each one, but

15  I looked at two or three specific examples.  One was with

16  Virginia Bull, one is with Pilot for Play and one is -- and

17  certainly one is this B-O-N-E-R-N-A-T-I-L, I believe it is,

18  and number of images, specifically, I can't really say, you

19  know, but in this report there's two or three.

20       **MR. MCCOMMON:**  Your Honor, that was my recollection is

21  I was going to say perhaps 10 or less.

22       **THE WITNESS:**  Of the exchange with this one website?

23       **MR. MCCOMMON:**  Yes.

24       **THE WITNESS:**  Yes, but this is just one.  There are

25  other trades and other evidence of distribution.

1     **THE COURT:**  The government has handed me your report.

2     **THE WITNESS:**  Yes, sir.  And my report is extracted

3  based on review of the forensic CART examiner, Michael Hammer,

4  which I have with me as well.

5     **THE COURT:**  Now, what does that mean?

6     **THE WITNESS:**  Well, what I'm saying is it's a review of

7  the evidence and a review of his report where he indicates in

8  his official report that there's evidence of distribution in

9  the Google Hello website.

10     **MR. MCCOMMON:**  Your Honor, we had Agent Hammer, who was

11  the FBI's forensic examiner come down, and he spent a day with

12  us here in Macon, and I asked him specifically to show me

13  what, if any, evidence he had of distribution, and he didn't

14  show me anything other than what she identified in her report

15  as being distribution of anything that would be arguably or

16  close to the line of being child pornography.

17     **THE WITNESS:**  I did bring examples of the Virginia Bull

18  with me, if the Court wishes to review that.

19     **MR. MCCOMMON:**  Okay.

20     **THE COURT:**  Is that -- Virginia Bull, is that a part of

21  what's mentioned in this paragraph?  Do you understand what

22  I'm talking about here?

23     **THE WITNESS:**  Yes, sir.  Yes, sir.  When I wrote that,

24  I referred to my own review and a CART examiner report that

25  indicates that there was -- that there is distribution,

evidence of distribution, and when I reviewed the Virginia

Bull and the applicant -- there's several screen names --

B-O-N-E-R-I-N-A-T-L -- then that's where I, you know, reviewed

the evidence of distribution.

    **MR. MCCOMMON:** Do you have the photographs with you?

    **THE WITNESS:** Uh-huh.

    **THE COURT:** Did you think the photographs were

pornographic?

    **THE WITNESS:** I think there's a couple of them that are

considered -- in the Virginia Bull, I certainly think there is

blatant evidence of receipt of child pornography by John

Anderson from Virginia Bull.

    **THE COURT:** Is that distribution?

    **THE WITNESS:** My understanding is it's sending or

receiving, but I'm not the expert on that.

    **THE COURT:** What's the government's position -- What

about that, Mr. Hogue?

    **MR. HOGUE:** Receipt is not distribution.

    **THE WITNESS:** Receipt is not distribution?

    **MR. HOGUE:** Right. I mean, he has it on his computer,

and he's pled guilty to that. He had to have received that

from somewhere. Distribution --

    **THE COURT:** And that's possession?

    **MR. HOGUE:** Right. Distribution is a different act.

    **MR. MCCOMMON:** Your Honor, may I show you an example --

1  I think this will --

2      **THE WITNESS:**  Okay.

3  *(Counsel Aside)*

4      **MR. MCCOMMON:**  I'm showing the Court now the

5  photographs that were described in the report.  Those are the

6  actual photographs.

7  *(Counsel Aside)*

8      **MR. MCCOMMON:**  And, Your Honor, I'll hand to you now

9  what Agent Ward has provided.  These are photographs that were

10 apparently sent to the individual with the screen name

11 Boneranatil.

12     **THE COURT:**  I'm looking here, Agent Ward --

13     **THE WITNESS:**  Uh-huh.

14     **THE COURT:**  -- at two pages.  I don't know how to

15 identify them, but each one is -- each is part of a series of

16 pages.

17     **THE WITNESS:**  Uh-huh.

18     **THE COURT:**  This one, the one I'm showing you now says

19 page one of seven.  Can you specifically identify that, that

20 page?

21     **THE WITNESS:**  Yes.

22     **THE COURT:**  Or that group?  Tell me what that is.

23     **THE WITNESS:**  Those are pictures -- the two pictures at

24 the top, if you'll look at the top, it says those pictures

25 sent by local user.  Those are going to be pictures sent by

1   John Anderson and to Boner -- I don't know how you pronounce

2   that.

3        THE COURT:  Yes.  Okay.

4        THE WITNESS:  And then they'll talk about those

5   pictures, and then it goes on to pictures that that individual

6   sent to him.  This is screen name Applicant, again local user

7   sending two pictures.  These would be the pictures.  The send

8   one is questionable.  Certainly --

9        THE COURT:  Right.  And on this one, the second from

10  the top?

11       THE WITNESS:  Yes, sir.

12       THE COURT:  And so those are the only two images which

13  are the subject of this --

14       THE WITNESS:  No, sir.  No, sir, not just -- not the

15  only two.  Then there's other -- there is Pilot For Play is

16  mentioned in my report, further down.  I don't believe I have

17  that one with me, but that is -- there is an indication of

18  distribution in that one, and then I brought another one with

19  me with Virginia Bull.  I'm just trying to put my fingers on

20  it here.

21       THE COURT:  I want to do this.  I want to recess this

22  hearing, and I want you and Agent Ward, and possibly Mr.

23  Hogue, to go through these things and be able to place before

24  me what it is that's referred to in this third paragraph of

25  Agent Ward's report so that these things can be identified.

1    These images, as I understand it, are the images that both the

2    government and the defense concede were distributed, but are

3    not child pornography.  Is that right?

4         MR. MCCOMMON:  Yes, sir.

5         THE COURT:  All right.  Rather than me trying to sift

6    through, sitting on the bench with Ms. Ward, everything that's

7    the subject matter of that paragraph, I would like for you to

8    take the time to reconstruct it and then present it to me so

9    that I can then look at it, if it's not excessively

10   voluminous, and I gather that it's not, and possibly determine

11   for myself whether it's child pornography.  Can you do that?

12        MR. MCCOMMON:  Yes, sir.

13        THE COURT:  All right.  Let me hand these back to you,

14   Ms. Ward, and if you all will do that -- I can keep this for

15   the moment -- so let's recess the Anderson hearing, and while

16   they're doing that, we can go on to something else.  This

17   matter is in recess.  You can let me know when you're ready to

18   proceed.

19        MR. MCCOMMON:  Are you talking about today?

20        THE COURT:  I sure am.

21        MR. MCCOMMON:  Okay.

22   *(RECONVENED; ALL PARTIES PRESENT)*

23        THE COURT:  All right.  Let's come back to the Anderson

24   case.

25        MR. MCCOMMON:  Your Honor, may I ask that Special Agent

1    Ward retake the stand?

2         **THE COURT:**  Yes.  Be seated, please.  All right.  Go

3    ahead.

4              *(CONTINUED EXAMINATION OF JALAINE WARD)*

5    **BY MR. MCCOMMON:**

6    **Q.**   Special Agent Ward, at my request did you produce a

7    report of any evidence in this case that would have shown

8    distribution by Mr. Anderson of child pornography?

9    **A.**   Yes.

10   **Q.**   And we've previously gone over the report with the Court?

11   **A.**   Yes.

12   **Q.**   The Court has had a chance to read it?

13   **A.**   Yes.

14   **Q.**   I want to show you now three exhibits that I believe will

15   be shown to correspond to that report that's previously been

16   read by the Court.  Let me show you Government Exhibit 1, and

17   can you identify Government Exhibit 1 as three images that

18   were sent by the defendant to Applicant 002002 on March the

19   18th, 2006?

20   **A.**   Yes.

21        **MR. MCCOMMON:**  Your Honor, I'll publish these to the

22   Court as I put them in.

23        **THE COURT:**  Has defense counsel had an opportunity to

24   look at these?

25        **MR. HOGUE:**  Yes, Your Honor.  These are, in fact, the

1    photographs that were the subject of the negotiations we've

2    addressed in our objection.

3         THE COURT:  All right.  Very good.  Go ahead.

4    BY MR. MCCOMMON:

5    Q.   Special Agent Ward, I'm now going to show what's marked

6    as G-2, or Government Exhibit 2, and can you identify these as

7    images that were sent by the defendant to Boner in Atlanta on

8    February the 25th of 2006, I believe, that was 59 images?

9    A.   Yes.  54, uh-huh.

10        MR. MCCOMMON:  Your Honor, let me publish these to the

11   Court.  They begin at the bottom of the page, the first page.

12   BY MR. MCCOMMON:

13   Q.   And, Special Agent Ward, let me show you Government

14   Exhibit 3, marked as G-3.  Can you identify these as 180

15   images sent by the defendant to, again, Boner in Atlanta on

16   January the 29th, 2006?

17   A.   Yes.

18        MR. MCCOMMON:  And, Your Honor, I publish these for the

19   Court, and they start at the top of the first page shown.

20   Your Honor, that would be the extent of the government's

21   evidence concerning any distribution of arguable child

22   pornography in this case.

23        THE COURT:  All right.  Questions, Mr. Hogue?

24        MR. HOGUE:  No questions, Your Honor.

25        THE COURT:  All right.  With respect to these exhibits,

1    Agent Ward, which of these pictures in your judgment are

2    arguably child pornography, as opposed to just pictures of

3    children?

4        **THE WITNESS:**  This would be *(indicating).*  This would

5    be one in here.

6        **THE COURT:**  Let me see, now, this is Exhibit 1.  There

7    are three pictures on the first page of Exhibit 1.

8        **THE WITNESS:**  Yes.

9        **THE COURT:**  Did you point out any of those pictures?

10       **THE WITNESS:**  Yes, the second one.

11       **THE COURT:**  The middle picture?

12       **THE WITNESS:**  Yes.

13       **THE COURT:**  And then on the second page of Exhibit 1,

14   the middle picture of those three?

15       **THE WITNESS:**  Yes.  And basically what that second page

16   is showing --

17       **THE COURT:**  Well, that's the same picture?

18       **THE WITNESS:**  Exactly.  It's showing a summary of what

19   was sent by the local user on that second page, and so it

20   would be the one image.

21       **THE COURT:**  Okay.

22       **THE WITNESS:**  And then, this exhibit, it would be --

23   just making sure -- there's one sent by the user, and then

24   certainly a couple received *(indicating).*  One sent, that is

25   the second image on the top line, there.

1      **THE COURT:**  All right.  I'm going to put an arrow

2  there.

3      **THE WITNESS:**  Uh-huh.

4      **THE COURT:**  This is first -- well, I can't say it's the

5  first -- It's marked G-2, and to the right of G-2, it says

6  page six of seven, and on that sheet of paper there are three

7  rows of small photographs, and you are referring to the

8  photograph on the top row, which is the second from the left?

9      **THE WITNESS:**  That's right.

10      **THE COURT:**  Okay.  And that's all in G-2?

11      **THE WITNESS:**  I believe so, yes.

12      **THE COURT:**  All right.  And then G-3.

13      **THE WITNESS:**  That was sent, yeah.

14      **THE COURT:**  G-3, would you identify what photographs

15  you think are arguably child pornography?

16      **THE WITNESS:**  I don't have --

17      **THE COURT:**  You know, I think I have the color ones

18  here in the Court's file.  I know I do on some of them.  These

19  were part of the probation report to me.  It might be better

20  to use them.  They are certainly more -- the black and whites

21  are kind of grainy.

22      **MR. MCCOMMON:**  Your Honor, while she's marking that,

23  may I make a statement?

24      **THE COURT:**  Yes, sir.

25      **MR. MCCOMMON:**  I think she's identified photographs, if

1    I heard her correctly, that were received.  If this two-level

2    enhancement is appropriate for receipt, then obviously it

3    applies because everything that he has he received.  But

4    according to the definition in this Guideline of distribution

5    what he received should not be applicable for this

6    enhancement.  I mean, by its very definition in the Guideline,

7    distribution is something he distributes to someone else.  If

8    receipt applies, obviously the enhancement would apply, but

9    then there's no need for the enhancement because everything he

10   has he received.

11        **THE COURT:**  You gentlemen told me before the recess

12   that you agreed that there was distribution.  You said you

13   didn't have any quarrel with "distribution."  Your opinion

14   was, at least the government's, and, of course, the defense

15   agreed, that the images portrayed, the images distributed were

16   not child pornography --

17        **MR. MCCOMMON:**  Yes, sir.

18        **THE COURT:**  -- but that it was a matter in which the

19   Court could inspect the images for itself and make a

20   determination.  Do I misstate what was said?

21        **MR. MCCOMMON:**  No, Your Honor, that's correct.

22        **MR. HOGUE:**  I think what we're saying is some of what

23   you're being shown is pictures received, not distributed.

24        **MR. MCCOMMON:**  Not distributed by the defendant.

25        **THE WITNESS:**  But I'm going to specify the ones that

1    we're pointing out that were sent, that we agreed on.

2         MR. HOGUE: Which I understand is the only ones the

3    Court is interested in with respect to this objection.

4         THE COURT: Well, I'm interested in the pictures which

5    are the foundation for the proposed enhancement.

6         MR. HOGUE: Right.

7         THE COURT: -- to which objection has been made.

8         MR. HOGUE: Yes. And what the government and the

9    defense is saying is that some of these on those pages are not

10   the subject of Paragraph 22 because they were not distributed

11   by Mr. Anderson.

12        THE COURT: Well, we left here -- you left here with

13   instructions to provide me with exhibits of the materials that

14   had been distributed, but which were contended not to be

15   pornographic.

16        MR. HOGUE: Right.

17        MR. MCCOMMON: And --

18        THE COURT: And with the assumption in my looking at

19   these photographs is that they were distributed. They were

20   distributed, that's what you said, and I said, okay, show me

21   what was distributed so I may make a determination as to

22   whether or not they are pornographic. And that's what I

23   assume we are doing here. Now, if we're not doing that, then

24   we'll stop again and go back to square one.

25        MR. MCCOMMON: No, Your Honor. That's correct, but the

1    summary reports show not only what was sent to those chat

2    people, but what they sent back, what was received by him.  So

3    what we have attempted to mark here is just what he would have

4    distributed.

5         THE WITNESS:  Right.

6         MR. HOGUE:  And if I may interject, I believe what I

7    did back in the room during the break was looked at the ones

8    that the government marked, and I thought that's what the

9    witness was giving up to the Court just now.  And we marked a

10   handful of photos on some black and white summary reports.

11   But, now --

12        THE WITNESS:  If you trust me, Frank, I can label these

13   same three or four that we came up with that were sent, if you

14   want me to put -- I'll put an S by the ones --

15        MR. HOGUE:  The same ones we just did in the room?

16        THE WITNESS:  Yes, sir.

17        MR. HOGUE:  I'm fine with that.

18   *(Pause-Aside)*

19        THE COURT:  I want you to do this.  I want you to take

20   these down, get with government's counsel and defense counsel,

21   rather than handing me up a number of sheets --

22        THE WITNESS:  Okay.

23        THE COURT:  -- extract the pages that have the

24   contested the images on them, give me only those sheets, and

25   have them clearly marked as to which they are.

1      THE WITNESS:  Yes, sir.

2      MR. HOGUE:  And I'll point this out, Your Honor, with

3  respect to the Court's use of the word "contested," neither

4  party here contest those.

5      THE COURT:  That may have been a misstatement.

6      MR. HOGUE:  Thank you, Your Honor.

7      THE COURT:  I'm going to say questionable, because

8  there's a question in the Court's mind.

9      MR. HOGUE:  Raised, I take it, by U.S. Probation, not

10  by the government or the defense, though.

11      THE COURT:  Raised by the Court.

12      MR. HOGUE:  Thank you, Your Honor.

13  (Pause-Aside)

14      THE COURT:  All right.  I'm holding one, two, three --

15  four pages containing -- each containing small color

16  photographs, and I'm going to mark this Court's Exhibit 1.

17  (Aside)

18      MR. HOGUE:  Your Honor, are you getting to the further

19  clarification that will be needed?

20      THE COURT:  I'm trying to.

21      MR. HOGUE:  I think we can help the Court do that.

22      THE COURT:  All right.

23      MR. HOGUE:  Because not every photo on those four

24  pieces of paper is now being contended by the witness --

25      THE COURT:  I understand that.  Ms. Ward says, that's

1    on this first page, there's a little photograph here marked

2    with an S.

3         THE WITNESS:  Yes, sir.

4         THE COURT:  And it's your judgment that that's

5    pornographic?

6         THE WITNESS:  Right.

7         THE COURT:  And then on the second page, the second

8    photograph down is marked with S by Ms. Ward, and that's

9    another photograph that in your judgment is arguably

10   pornographic?

11        THE WITNESS:  Yes, sir.  And if I might clarify, it's

12   not necessarily just the photo alone.  It's the photo in

13   conjunction with the conversations about having sex with the

14   child and the bartering back and forth of something obviously

15   that both parties on both ends want to have, for that purpose,

16   for sexual -- so it's a combination of the picture and the

17   chat that I feel is --

18        THE COURT:  Well, that raises another question now.

19        MR. HOGUE:  That's completely irrelevant.

20        THE WITNESS:  Okay.

21        THE COURT:  Do you agree with that?  I mean, I did not

22   understand that it was a violation of law for people to chat

23   back and forth on a computer about these things.  It's the

24   images that are the offense.

25        MR. MCCOMMON:  That's correct.

1    **THE WITNESS:**  Okay.

2    **THE COURT:**  Is that correct?

3    **MR. MCCOMMON:**  That's correct.

4    **THE COURT:**  Do you agree?

5    **MR. HOGUE:**  I do.

6    **MR. MCCOMMON:**  The chat would show the intent.

7    **THE WITNESS:**  Okay.

8    **THE COURT:**  All right.  On the third page there are

9    five pictures here, and the third one, is that -- do you

10   contend that?

11   **THE WITNESS:**  Yes.  And I apologize, I meant to put an

12   S by that, rather than a three, I was counting, that's an S.

13   **THE COURT:**  All right.  I'll put an S by it.  And then

14   on the fourth page, in the top row, the photograph second from

15   the left on the top row?

16   **THE WITNESS:**  Yes.

17   **THE COURT:**  Okay.  All right, this is Court's Exhibit

18   C-1, and it's admitted, and we are all in agreement about the

19   pictures, are we not, Mr. Hogue?

20   **MR. HOGUE:**  Yes, sir.

21   **THE COURT:**  Do you want to look at that one more time?

22   **MR. HOGUE:**  Yes, if I may.  Yes, we are in agreement as

23   to the four photographs marked.

24   **THE COURT:**  All right.  Anything else anybody wants to

25   say about these pictures?  Diane --

1    *(Aside)*

2        **THE COURT:**  Yes, they'll be sealed.  Mr. Hogue,

3    anything else?

4        **MR. HOGUE:**  With regard to the photos?

5        **THE COURT:**  Yes.

6        **MR. HOGUE:**  Well, simply this, Your Honor, just to get

7    us back to where we started.  Both the government and the

8    defense viewed them in discovery and negotiations, and both

9    the government and the defense concluded that they do not fit

10   the definition in the statute, and thus we negotiated our plea

11   deal accordingly, and that's why we both now object to

12   Paragraph 22.

13       **THE COURT:**  All right.  The Court has inspected these

14   marked pictures in Exhibit C-1 and finds that on page one,

15   page one of Exhibit C-1, the middle photograph marked S meets

16   the definition of child pornography.

17       On page two, the second picture down from the top, that

18   meets the definition.

19       On page three, the third photograph down from the top,

20   does not meet the definition.

21       And on page four, the photograph in the top row, second

22   from the left, does not.

23       So we have two that do.  Distribution is admitted.  And I

24   overrule the objection to Paragraph 22.

25       **MR. HOGUE:**  And, Your Honor, for clarity of the record,

1  you're using, I presume, the definitions of child pornography

2  and minors engaging in sexually explicit conduct that are set

3  out in 18 U.S.C. Section 2252 and 2256, I presume?

4      **THE COURT:**  I don't have those statutes in front of me.

5  I will issue a written order.

6      **MR. HOGUE:**  Thank you.

7      **THE COURT:**  Okay.  That takes care of the objection to

8  Paragraph 22.  Paragraph 24 -- yes, anything else you want to

9  say about that?

10      **MR. MCCOMMON:**  No, Your Honor.

11      **THE COURT:**  Mr. Hogue?

12      **MR. HOGUE:**  No, Your Honor.

13      **THE COURT:**  Where is Ms. Thomas?  Come up here a

14  minute.

15  *(Aside)*

16      **MR. HOGUE:**  Your Honor, if I may add one further

17  clarification to the Court's finding just now, I did cite the

18  statute, but can I very briefly say what it includes as

19  prohibited, to possess and distribute, and it would be a minor

20  engaged in sexually explicit conduct, which the statute at 18

21  U.S.C. Section 2256(2) defines as "actual or simulated," and

22  there are five subparts, "sexual intercourse," and it breaks

23  that down into all the different ways that can occur,

24  "bestiality, masturbation, sadistic or sadistic abuse," and

25  finally, "lascivious expedition of the genitals or pubic

1  areas." So that's why we concluded in --

2      **THE COURT:** The Court's ruling is based on the last one

3  you mentioned.

4      **MR. HOGUE:** All right.

5      **THE COURT:** Anything else y'all want to say with

6  respect to Paragraph 24?

7      **MR. HOGUE:** That was 22, Your Honor.

8      **THE COURT:** I understand, you and I just addressed

9  Paragraph 22, lascivious expedition.

10      **MR. HOGUE:** Correct.

11      **THE COURT:** I've ruled on Paragraph 22. I'm now

12  considering the objection to Paragraph 24. Anything else

13  anybody wants to say about that?

14      **MR. MCCOMMON:** No, Your Honor.

15      **THE COURT:** All right. It's apparent to me that there

16  are many, many more images, 600 or more, a part of which were

17  included on the hard drive and part of which were included in

18  other forms.

19      The government apparently has reservations about which

20  images would pass evidentiary scrutiny in a trial, but I don't

21  believe that that limits the Court's consideration of the

22  other materials.

23      The objection to Paragraph 24 is overruled. All right.

24  Any there other objections?

25      **MR. MCCOMMON:** Not from the government, Your Honor.

1    **THE COURT:** Mr. Hogue?

2    **MR. HOGUE:** No. Those are our only objections to the

3    presentence report.

4    **THE COURT:** All right. It's nearly lunch. I'm going

5    to recess until 1:30. I'll hear your arguments at that time

6    and impose sentence.

7    **MR. HOGUE:** May I ask for one consideration, Your

8    Honor? I do have a plea hearing scheduled with Judge Ennis at

9    1:30. I can call him and ask that to be changed or --

10    **THE COURT:** Yes, do that.

11    **MR. HOGUE:** I'll do that, Your Honor.

12    **THE COURT:** All right. I also understand there are

13    people who want to address the Court, and I'll hear whoever

14    wants to.

15    *(RECONVENED; ALL PARTIES PRESENT, 1:30 p.m.)*

16    **THE COURT:** Be seated, please. All right. Does the

17    government have anything else to say?

18    **MR. MCCOMMON:** Your Honor, the only thing I'd like to

19    do is the Court requested that I file with the Court the

20    response of Mr. Marsh waiving restitution. So let me file

21    that with the Court at this time. I'm filing a letter that I

22    wrote to him on June 25th, and then an e-mail that he sent to

23    me on July 14th withdrawing his request for restitution.

24    **THE COURT:** Very good. Thank you. Let that be filed.

25    **MR. MCCOMMON:** Nothing further.

1    THE COURT:  All right.  Mr. Hogue?

2    MR. HOGUE:  May I have one moment to confer with the

3    U.S. Attorney, Your Honor?

4    THE COURT:  Sure.

5    (Pause)

6    MR. MCCOMMON:  Your Honor, the government has nothing

7    to offer further, but it's my understanding that Nancy

8    Anderson, the ex-wife of the defendant, wants to address the

9    Court.

10    THE COURT:  I'll be glad to hear from her.  Ms.

11    Anderson, you can come up and stand right there in front of

12    me.  Identity yourself for the court reporter, please.

13    THE WITNESS:  Nancy S. Anderson.

14    THE COURT:  Proceed.

15    THE WITNESS:  I appreciate the Court for letting me

16    speak today.  April 21st, 2006 was the day I found out that

17    the man I had been married to for 16 years was involved in

18    child porn and was a pedophile.  Lee had thousands of CDs and

19    videos at our house and the storage facility.  What a shock.

20    Our lives changed forever.  The direct victims were the images

21    of the naked boys and girls and many had bruises on their

22    legs.  I still have flashbacks of the disgusting pictures I

23    saw, Lee, and hopefully they will diminish with time, but it

24    has been over three years.  The indirect victims are our

25    children, your parents, Dr. and Mrs. Anderson, your sisters

and their children, and myself.  Our children will always have
to deal with their father being a pedophile.  That's just
turned our world upsidedown, and I'm the one holding the bag
trying to make things right.  Your selfish actions went on for
many, many years, unbeknownst to me.  I was naive and
trusting, and you used that to your advantage.  It was such a
violation of my trust in you, Lee --

     THE COURT:  Let me interrupt you, if I may,
Ms. Anderson.  I'm glad to hear from you on any matter which
-- anything you have to say in furtherance of sentencing.  I
understand that you harbor deep feelings of ill will and
resentment toward Mr. Anderson, but I'm not going to allow you
simply to stand here and castigate your former husband, you
know, just for your own satisfaction.  That has no proper
place in this proceeding.

    I have read your letter, word for word.  I understand
clearly what it says and how you feel, and I sympathize with
you, but what you're doing now simply has no place in this
proceeding.  Now, if you want to continue on another vein or
say anything else to me, I'll be glad to hear you.

     THE WITNESS:  Well, I feel like I am a victim and my
children are a victim.

     THE COURT:  Yes, ma'am, you are indeed a victim.  I'm
in total agreement with you about that.  But that does not
entitle you to give a court-sanctioned lecture to your former

1   husband, and you may not understand that, and I'm sorry if you

2   don't, but that's going to be the rule.

3          THE WITNESS:  Okay.

4          THE COURT:  Is there anything else you'd like to say?

5          THE WITNESS:  No.

6          THE COURT:  Okay, thank you, ma'am.

7          THE WITNESS:  Hopefully justice will be served.

8          THE COURT:  All right.  Is there someone else?

9          MR. MCCOMMON:  No, Your Honor, not from the government.

10         THE COURT:  Mr. Hogue, anyone else for you?

11         MR. HOGUE:  Yes, Your Honor.  I know that the Court has

12  received a number of letters.

13         THE COURT:  They've all been read.

14         MR. HOGUE:  There's about 15 or so of them.  There are

15  some family members here.  Two of them have expressed an

16  interest in saying a few brief words to the Court in

17  connection with sentencing.  If the Court will allow Laura

18  Edwards, who is Mr. Anderson's sister, and then his mother and

19  father, if they could come forward, his mother would have a

20  few words as well.  Would you like them to come up

21  individually, however?

22         THE COURT:  They can all come together if they like.

23         MR. HOGUE:  Doctor and Ms. Anderson, if you would come

24  up as well.  And, Ms. Edwards, introduce yourself to the Court

25  and say your name for the court reporter.

1    **THE WITNESS:**  I'm Laura Anderson Edwards, the sister of

2    Lee, and I just want to ask for leniency.  He's been a

3    wonderful brother and an uncle to my children, and I've always

4    trusted him with my children.  I have two that are grown, and

5    one that is 14.  And I just beg your mercy.

6    **THE COURT:**  I understand.

7    **MR. HOGUE:**  Your Honor, this is Lee's parents,

8    Mr. Anderson's parents, Dr. Anderson and Bobbi Anderson.

9    **THE COURT:**  Yes.

10   **THE WITNESS:**  I just want to ask for leniency for my

11   son because we have not many years left for us, and we love

12   our son, and we support him, and we will always support him.

13   And for his -- actually he has a good relationship with his

14   children, and for their sake, I think he needs to be in their

15   life.  That's all I have to say.  I just plead for leniency.

16   **THE COURT:**  Yes, ma'am.  Thank you, Ms. Anderson.  Dr.

17   Anderson?

18   **THE WITNESS:**  I have to speak for him.  He does have

19   bad health.  I just have to speak for him.

20   **THE COURT:**  Very good.

21   **THE WITNESS:**  Thank you, Your Honor.

22   **MR. HOGUE:**  Your Honor, Mr. Anderson also would like to

23   address the Court, and I'll say a few final words for him.

24   **THE COURT:**  All right, Mr. Anderson.

25   **THE DEFENDANT:**  Your Honor, it's hard, if not

impossible to express my sorrow for the hurt that I've caused

so many people who are dear to me.  My loved ones, innocent

people, have received painful scars for life and have been

hurt only because of their association and love for me.

The pain that I caused myself was self-inflicted, but the

pain that they have endured is the pain that is hard for me to

live with.  I deserve my pain, but they don't deserve any

pain.

Anyone who thinks that viewing pornography doesn't hurt

anyone is wrong.  Not only the victims of the pornographic

images are hurt, but everyone that's dear to the person

viewing them is also hurt.  Viewing pornography on your

computer is bringing a destructive force into your home.

Anyone who views pornography on a computer has a very

good chance at some point of being sent some form of child

pornography if they continue to view it.  At that point they

have several choices, and you must make a decision either to

report the individual who sent the material to you, or take

the cowardly action and try to ignore the images.

If you take no action because you're worried that your

wife might find out that you're viewing pornography or that

you might be afraid that you might get yourself in trouble, I

say that anyone who may find themselves in that situation to

stand up, and the only way to prevent the problem from

spreading is to take the courageous action and report someone

who does send that type of material over the Internet.

Ignoring the act is ignoring the problem, and it's allowing the problem to continue to grow.  Don't ignore the problem and seek help.  Some good books that I've read that have helped me is Every Man's Battle by Steve Arterburn.

And I would say, if you are married, to seek marriage counseling and individual counseling, and if you're not married, please seek individual counseling on your own.

You can overcome the problem, but if you ignore the problem, then you, too have a good chance of ending up where I stand today, and that is, hurting the ones that you love, destroying your family, your career, your name, your reputation, all that you've cherished and worked so hard for, destroying the dreams for your loved ones as I have done.

The people who I have hurt by my actions have shown me nothing but unconditional love.  I'm thankful for the three and a half years that I've had to rebuild these relationships, although the hurt that I have caused can slowly heal, the pain and the scars will always remain for both them and for me, but the pain that hurts the most is knowing that you've caused them pain.  Knowing that I've hurt them hurts the most.

Although I'm a better father than I once was, my children have lost a father to be at their side in times of their joy and also to be there to comfort them in their time of distress.  The time that we do get to share is always filled

with love and joy, although we all know that that time that we have to share together is for a short time until we get to see each other again.

I have not been able to participate in my children's life at all for the last six months, and I know that after today that time apart will be much longer. I want them to know that I love them and that I'm sorry for my actions. I ask and I hope that they can forgive me for not being there and for not being there for them in this critical time in their lives.

I ask them not to harden their hearts and to continue to love God and remember that God causes all things to work together for good for those who love him. To my parents who have stood by me and supported me, I want to again say that I'm sorry. They have always shown me unconditional love and have always taught me and shown me strong values.

I am sorry for disappointing and hurting them, and I treasure their love. They should be enjoying their golden years, yet I have hurt them deeply. Over the last three and a half years we have grown closer, but I'll never be able to make up for the hurt that I've caused them.

My sisters and their family have also been through much pain and hurt as a result of my actions. I am thankful for the love and support that they have give me, and I'm sorry for the hurt that I've caused them.

To my ex-wife Nancy I too am sorry for the pain and

1   disruption that I have caused in her life.  Although we did

2   have our problems, I never meant to hurt her, and I accept the

3   blame.

4        Finally, to the Court, I apologize that my actions have

5   caused me to appear before you today and that I've taken up

6   valuable court time.  I've tried to accept the responsibility

7   for my actions and to minimize the use of the court's time and

8   resources.

9        I ask for your grace and mercy today as you pronounce

10  your sentence, and I have to live daily with the pain that I

11  have caused the ones that I love.  Your grace in sentencing

12  will allow me to continue to rebuild and repair the hurt that

13  I've caused my children, my parents, my ex-spouse, Nancy, and

14  my siblings.

15       Every day that I'm allowed to spend with them is precious

16  to me.  I ask for an opportunity to continue to repair the

17  hurt that I've caused while my children are still young and

18  while I still have my parents with me.  Thank you, sir.

19       **THE COURT:**  All right, thank you.

20       **MR. HOGUE:**  If Your Honor will allow me to a few

21  concluding words on behalf of Mr. Anderson.  As the Court well

22  knows, justice in American criminal courts is achieved on a

23  case by case basis.  We don't achieve it in the abstract.  So

24  the question today is what's justice for John Lee Anderson,

25  III in light of the crimes he's committed.

1     When we entered the case three and a half years ago, and

2     that's how long ago this broke, and began our negotiations

3     with the government, Mr. Anderson admitted to me and

4     ultimately to the world that he was guilty, that he did

5     possess and view child pornography.

6     So, I told the government that, and we waived the grand

7     jury process and pled guilty to an information.  We didn't

8     want to put the government even to the burden of presenting

9     the case to the grand jury, and that's what we did.  No

10    indictment was ever even drawn up.

11    Also, in negotiating what we believed to be, the

12    government and defendant, a fair resolution for justice in our

13    collective opinion, we negotiated to a result that we hoped --

14    though we know Paragraph Five of the presentence report says

15    none of what we negotiated is binding on this Court, and I'm

16    well-aware of that -- but we negotiated what we hoped would be

17    a fair and just result, and that result would have been a

18    sentencing range of 41 to 51 months.

19    I realize that by rulings made earlier today in this case

20    we may not be in that range any longer.  But those were

21    matters that we looked hard at, negotiated about, and hoped

22    that the Court would accept in accepting Mr. Anderson's plea

23    and imposing sentence on him.

24    How much liberty should be taken from this man for what

25    he's done?  I'm asking the Court for some temperance and some

1    proportionality here.  These are difficult crimes to deal with

2    as a defense lawyer, as a prosecutor, as witnesses, and as the

3    Court.

4        I've done many of them, as well as state cases involving

5    child molestation, and I find in my own experience there's no

6    kind of case that causes greater revulsion and emotional

7    response than one involving children and sexual exploitation.

8    Even murder cases don't get the kind of ire that these do.

9        So, the Court, I know, brings to the equation temperance

10   and wisdom and can impose a sentence that's proportional.  In

11   our state system, for example, as the Court well knows, a

12   person can face a minimum of five years, which is less than

13   what Mr. Anderson is looking at here for actual molestation of

14   a live child.

15       I don't say that to minimize what harm has been down

16   here.  I've read the victim impact statements.  They're quite

17   moving.  Mr. Anderson has read them, and they cause him great

18   pain, and he's expressed that just now to the Court.

19       So, I ask that the Court take into consideration a couple

20   of other factors here that are not objections, of course, but

21   just additional information, some of which is in the

22   presentence report.

23       But for the last three and a half years since this came

24   to light, Mr. Anderson has sought the assistance of Dr. Gene

25   Able up in Atlanta near Emory University at a place called

Behavioral Medicine Institute of Atlanta where he underwent
extensive testing to determine whether or not he fit the
criteria of pedophilia.

The conclusion reached, after those independent tests,
were that Mr. Anderson does not meet the diagnostic criteria
for pedophilia, and further, Dr. Able recommended that he
participate in specialized sex offender therapy, specifically
a cognitive behavior therapy program with a strong relapse
prevention component to help him gain control over his
behavior.

He did that, and for some lengthy period of time he met
regularly with a therapist in the Middle Georgia area dealing
specifically with this issue.  He has stayed off the computer.
He's violated no conditions.  He's, of course, been found not
to be a danger to children as a pedophile, and further, took a
polygraph test in which he answered questions and a
polygrapher examiner said he passed concerning whether he had
ever made any efforts to reach a live child to act in a
further step to what he did in viewing child pornography.

There's no indication that he's ever harmed his own
daughters, and to all accounts, he's been quite attentive and
a good father to him, other than the pain he's caused by this
act, of course.

Your Honor, just also in terms of proportionality, a
couple of other things to consider.  I know these don't have

1  to do with the loss of liberty that he's about to experience,

2  but just so the Court will know other losses Mr. Anderson has

3  suffered as a direct result of this.

4      Before this came to light he was living in a $400,000

5  home with his two children and his wife.  He was the vice

6  president of commercial lending at a local bank.  He had a

7  good salary.  His wife had a good salary.  They lived a good

8  life.  They had good friends.  They vacationed together.  They

9  had assets.  They had a future.

10      He has lost every bit of that, and he, in fact, has been

11  in jail in Bibb County since February of 2009 in civil

12  contempt of divorce court because he was unable to sell a

13  piece of property and convey the $50,000 he owed as part of

14  his divorce agreement.  He attempted to sell it.  It's still

15  on the market.

16      I'm not sure, I wasn't his lawyer in that case, but it is

17  a little puzzling to me that he would be found in contempt for

18  not selling something no one would buy and has sat in jail for

19  the last six months.  Nevertheless, that's what's happened.

20  He hasn't had representation in that matter these last few

21  months, as I understand it.

22      In light of that, though, I'd like to ask this

23  consideration of the Court, and I don't have any legal

24  authority for it, but our first sentencing hearing was

25  scheduled in this case April the 7th of 2009.  There have been

1    delays since then, not occasioned that I can tell by any

2    deliberate effort by anyone to delay the case, it's just one

3    of those things, and it got delayed until now, late in July.

4    Some of it perhaps may have been my own scheduling, but others

5    not.

6        So I ask the Court to at least consider since April 7th,

7    2009, even though he was not technically in federal custody,

8    credit for those three months and a half months, and the Court

9    make that a part of its sentence.  More than that, though, I'd

10   like to ask the Court to impose a sentence that would be

11   within the advisory guidelines, but that would come down to

12   the range that we contemplated.

13       I come back at the end on this point with regard to that.

14   I do know that the Court makes its own independent inquiry and

15   judgment as to the facts.  And I know that plea negotiations

16   can be entered into in good faith between the parties and that

17   they don't bind the Court.

18       But I also know that as a matter of practice and a matter

19   of course, we lawyers do get accustomed to reaching plea deals

20   that we've worked hard to get, and in the vast majority of the

21   cases, as the Court well knows, the Court imposes a sentence

22   in accordance with the judgment of those lawyers and the

23   defendants themselves.

24       So it's difficult, it's difficult for the defense lawyer

25   and for his client when that happens, and then we experience

1    what we've experienced today where we, both the government and

2    the defendant, agreed to what we thought the facts should be,

3    and the Court has found otherwise.

4          I understand and respect that process, but I ask that,

5    Your Honor, that you do find it appropriate for Mr. Anderson,

6    that justice for him means the loss of liberty only in the

7    range of the 41 to 51 months that we negotiated.

8          I will mention one last thing that hasn't been mentioned,

9    but there was a provision in the plea agreement that the

10   government would ask the Court, and it may have just been an

11   oversight or the government assumes the Court is aware of it

12   in the plea agreement, to impose the sentence at the low end

13   of whatever guideline range the Court uses.

14         So that's a matter the government would ask for and has

15   done so in its plea agreement, and we ask for that, likewise.

16   Thank you, Your Honor.

17         **MR. MCCOMMON:**  Nothing further.

18         **THE COURT:**  All right.  The guideline computations in

19   this case, as a result of findings made by the Court in this

20   hearing, begin with a base level of 18.  Two points are added

21   because the material involved included a prepubescent minor,

22   or a minor who had not attained the age of 12 years.  Two

23   points are added under Paragraph 23 -- 22.  We've discussed

24   that.

25         Two points are added because the offense involved the use

1   of a computer for the possession, transmission, receipt, or

2   distribution of the material, and five points are added

3   because the offense involved 600 or more images.  Three points

4   are taken off for acceptance of responsibility.

5        The total offense level is 26, the criminal history

6   category is one, and the range is 63 to 78 months.

7        Mr. Hogue, I acknowledge that you don't agree with

8   Court's rulings on your objections, but the Court having

9   ruled, do you agree with the computation?

10        **MR. HOGUE:**  I do, Your Honor.

11        **THE COURT:**  Okay.  The presentence report has been

12   prepared, filed, considered, and accepted.  The Court accepts

13   it and adjudicates Mr. Anderson guilty of Count One of the

14   indictment.  The sentencing guidelines have been consulted and

15   taken into account, and the Court has announced the range and

16   offense level.

17        Mr. Anderson, the Court commits you to the Bureau of

18   Prisons for a period of 70 months.  Restitution, as we all

19   understand, has been settled.  There are no restitution

20   issues.

21        The prison term is to be followed by a period of

22   supervised release of 20 years.  You shall report to the U.S.

23   probation office in the district to which you are released

24   within 72 hours of release from the custody of the Bureau of

25   Prisons to begin service of the term of supervised release

1    which will include the standard and mandatory conditions, as

2    well as the following special conditions:

3         First, you are prohibited from possessing a firearm or

4    other dangerous weapon.

5         Second, you shall participate in a substance abuse

6    program that may include testing to determine whether you have

7    reverted to the use of drugs or alcohol, and may include

8    treatment of alcohol and/or drug addiction or dependency.

9         The probation office shall administratively supervise

10   your participation in the program by approving it,

11   administering the testing, and supervising the treatment.

12        Third, you shall participate in a mental health program

13   to include any sexual offender treatments as recommended by a

14   psychiatrist or a psychologist.  Such treatment may include

15   mental health counseling, residential treatment, outpatient

16   treatment, and/or the prescription of psychotropic medications

17   by a medical doctor.

18        The probation office shall administratively supervise

19   your participation in the program by approving it, and

20   monitoring your participation in it.

21        Fourth, you shall register with the state sex offender

22   registration agency in the state where you reside, work, or

23   are a student as directed by the probation officer.

24        Fifth, you shall not use nor own any device which allows

25   Internet access, other than those which are authorized by this

1   court and administered by the probation officer.  This

2   includes, but is not limited to, personal digital assistance,

3   electronic games, web TV solutions, Internet appliances, and

4   cellular devices.

5       You shall not make repairs, modifications, or install

6   software on authorized computer systems or cellular devices

7   without pre-approval by the probation office.

8       You may only access e-mail accounts, chat rooms, instant

9   messaging services, and/or other online environments which

10  allow for user interaction via pre-approved and authorized

11  accounts.

12      You shall not view, access, possess, and/or download any

13  pornography.  This includes, but is not limited to, images of

14  minors.

15      You shall not possess nor use removable media configured

16  with bootable operating systems.  You shall submit your

17  computer, associated hardware, and digital media for

18  monitoring and review by the probation office upon request.

19  This includes review of your Internet-capable cellular device.

20      Sixth, you shall provide financial information to the

21  probation officer upon request.

22      Seven, you are prohibited from incurring new credit

23  charges or opening additional lines of credit without the

24  approval of the probation office.

25      And, eight, you shall cooperate in the collection of DNA

1      as directed by the probation officer.  A mandatory assessment

2      in amount of $100 is imposed.

3          It's my opinion you are not able nor likely to become

4      able to pay all or part of a fine even with the use of a

5      reasonable installment schedule.  I therefore waive the fine,

6      as well as any alternative sanctions.

7          The sentence as imposed is an appropriate sentence in

8      this case, complies with the factors that are to be considered

9      as set forth at 18 U.S.C. 3553(a), and adequately addresses

10     the totality of the circumstances.

11         Now, Mr. Anderson, you have knowingly and voluntarily

12     waived your statutory right to appeal this sentence with

13     certain exceptions as specified in your plea agreement.

14         But if you decide to appeal the sentence based on one of

15     these exceptions, you must file a notice of appeal with the

16     clerk of this court within ten days of judgment being entered

17     in the case.

18         If you decide to appeal, you're entitled to be

19     represented by a lawyer, and Mr. Hogue will continue as your

20     counsel.  Do you understand the sentence I've imposed?

21              **THE DEFENDANT:**  Yes, sir, I do.

22              **THE COURT:**  Do you have any questions or objections?

23              **THE DEFENDANT:**  No, sir.

24              **THE COURT:**  Mr. Hogue, do you understand the sentence?

25              **MR. HOGUE:**  I do.

1          **THE COURT:**  Questions or objections?

2          **MR. HOGUE:**  One request.  Voluntary surrender.  If I

3    may briefly say why.  But for the civil contempt, Mr. Anderson

4    would have walked in here from the street where he's been on

5    bond for the last several years, and the possibility exists

6    that he may be able to purge himself of that contempt, he's

7    hoping so, and be released from custody.

8          The Bureau of Prisons may take 60 days or more before

9    they can place him, and given the length of the sentence,

10   Mr. Anderson requests that he be allowed to post bond for

11   voluntary sentence so that he may spend some time concluding

12   his affairs and spending it with his aging parents before he

13   goes off to do this 70-month sentence.

14         **MR. MCCOMMON:**  Your Honor, may we address this if it

15   becomes -- if he actually gets out of jail?  I'm not sure as I

16   stand here if there's any statute that we need to be aware of

17   as to whether or not he can voluntarily surrender.

18         **MR. HOGUE:**  There's no statutory impediment to it.

19   This is a crime for which he could, if the Court decides to

20   allow it.  I believe it was specified to us in one of the

21   cover letters we got with the PSR, as well, and I didn't find

22   any disqualifications for the Court to grant this.

23         And again, had he not been in contempt, he would have

24   walked in here, and I don't think the statute would have

25   required the Court to take him into custody today.  In fact,

1    I'm sure it would not require that.

2         MR. MCCOMMON:  Your Honor, my only comment would be

3    that if the Court does grant voluntary surrender, that the

4    Court might want to consider some conditions over what the

5    Court would normally do in terms of reporting, so forth.

6         MR. HOGUE:  He would comply, of course, with any

7    condition if he's allowed to surrender voluntarily.

8         THE COURT:  Well, the law does not require a court to

9    do a useless thing.  As of this moment he's incarcerated under

10   the order of superior court.  If he is released by the

11   superior court, you are welcome to bring an immediate motion

12   to my attention, and I will rule on it at the time.

13        MR. HOGUE:  All right.

14        THE COURT:  Okay.  That's all.  Mr. Hogue?

15        MR. HOGUE:  Yes, sir.

16        THE COURT:  In the Anderson case, you are directed to

17   file either a timely notice of appeal or a waiver signed by

18   yourself or your client.

19        MR. HOGUE:  Yes, sir.

20        THE COURT:  Very good.

21

22              *(SENTENCING HEARING CONCLUDED)*

23

24

25

1

2                    *CERTIFICATE OF REPORTER*

3        *I HEREBY CERTIFY THAT THE FOREGOING IS A CORRECT*
   *TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE*
4   *ABOVE-ENTITLED MATTER THIS 28th DAY OF OCTOBER, 2010*

5        *s/ SALLY L. GRAY, USCR,*
         *U.S. DISTRICT COURT-MIDDLE DISTRICT OF GEORGIA*
6        *E-mail: Sally_Gray@gamd.uscourts.gov*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25